**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ARTURO HERRERA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 19-cv-8298 |
| | ) | |
| DI MEO BROTHERS, INC., JOHN | ) | Judge Robert M. Dow, Jr. |
| DIMEO, INDIVIDUALLY, TIM | ) | |
| GAVIN, INDIVIDUALLY, and MARK | ) | |
| DIMEO, INDIVIDUALLY, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

For the reasons set forth below, the motion to dismiss [37] is granted in part and denied in part. Specifically, the motion is granted with respect to: disparate treatment claims in Counts I and II; claims based on ethnicity in Counts I and II; Count III; and Count V, all of which are dismissed without prejudice. The motion is denied with respect to: constructive discharge claims in Counts I and II; Count IV; and all requests to strike material from the amended complaint. Plaintiff is given until April 29, 2021, to file a second amended complaint, if he wishes and can do so consistent with the reasoning in this order and Federal Rule of Civil Procedure 11. Counsel are directed to file a joint status report no later than May 6, 2021 that includes a proposed case management plan.

## I. Background[1]

Plaintiff Arturo Herrera has sued his former employer, its owners, and an employee for, in short, discriminating against him based on his ethnicity or national origin or both and for failing

---

[1] For purposes of the motion to dismiss, the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

to pay certain wages he claims to be owed. Defendants move to dismiss many of the discrimination claims. The facts relevant to resolving the motion to dismiss are as follows.

Plaintiff worked as a driver and shop maintenance worker for Defendant Di Meo Brothers, Inc. from approximately November 7, 2017 until June 17, 2019. [34 at ¶ 10.] The company provides construction services and is owned by Defendants John and Mark Di Meo. [*Id.* at ¶¶ 2, 3, 5.] Plaintiff is Hispanic and of Mexican national origin. [34 at ¶ 9.] Plaintiff's supervisor was Defendant Timothy Gavin, who is Caucasian. [*Id.* at ¶¶ 12, 13.][2]

Plaintiff claims that during his time at Di Meo Brothers, Inc., the company, John Di Meo, Mark Di Meo, and Gavin (together, "Defendants") subjected Plaintiff to harassment and abuse that Plaintiff says was based on his ethnicity or national origin or both. For example, Gavin singled Plaintiff out for discriminatory questions, including inquiries about his citizenship and about whether his tattoos were gang related; Gavin used an ethnic slur to refer to Mexicans while on Di Meo Brothers premises without consequences or discipline on at least one occasion; and Gavin subjected Plaintiff to stricter observation than other employees outside of Plaintiff's protected class, including by taking photographs of Plaintiff performing his work. [*Id.* at ¶ 14.]

Plaintiff also alleges several instances of damage to his personal vehicle and his wife's vehicle while they were parked on Di Meo Brothers' premises during work hours. Between March 2019 and June 2019, Plaintiff discovered that screws had been driven into the tires of both his and his wife's vehicles on multiple occasions, and he discovered air leaking out of his vehicle's Schrader valve. [*Id.* at ¶ 15.] "One or more individuals threw rocks at the vehicles while parked in the designated employee parking lot, which cracked Plaintiff's windshield and caused him to

---

[2] Defendant contests whether Gavin was Plaintiff's supervisor, but ineffectively (as described below), so the Court takes the allegation and the facts that support it as true for purposes of deciding the motion to dismiss.

incur costs in having it replaced." [*Id.*] After he had the windshield replaced, he continued to suffer harassment and his vehicle continued to sustain damage—including chips to paint, glass, and his newly replaced windshield, scratches and dents, nuts and bolts being loosened, the removal of a lug nut and a nut from the shock bolt—and on June 13, 2019, someone pulled the electrical harness out of his vehicle's transmission while it was parked on company property, rendering it undrivable. [*Id.* at ¶¶ 15, 18.] (The complaint does not allege who caused any of the damage to the vehicles.)

Plaintiff reported the incidents to the company and its owners, John and Mark, several times. Neither did anything to stop the abuse, and John laughed at Plaintiff at least once. [*Id.* at ¶¶ 16-17.] On June 17, 2019, Gavin approached Plaintiff at work and said that further complaints would cause Plaintiff to lose his job. [*Id.* at ¶ 19.] Gavin then made a phone call, and shortly afterwards Plaintiff received a call from Pete, a superintendent at Di Meo Brothers, who told Plaintiff that he needed to stop complaining to the company about the damage to his vehicle. [*Id.* at ¶¶ 19-20.] Shortly after that, Mark approached Plaintiff and yelled at him. Mark said that he would always take Gavin's side and if Plaintiff wanted to lose his job over a truck, he could go home. [*Id.* at ¶ 21.] Mark then required Plaintiff to stay at the job site to do sewer and water work, despite knowing that the work would require Plaintiff to violate his work restrictions, which were the result of an injury he suffered while working at Di Meo Brothers. [*Id.* at ¶ 22.] As a result of the abuse he received, Plaintiff was forced to leave his position with Di Meo Brothers on June 17, 2019. [*Id.* at ¶ 23.]

Plaintiff filed a complaint [1] in this court on December 19, 2019 and an amended complaint [34] on July 31, 2020. The amended complaint contains seven counts:

- Count I: Violation of 42 U.S.C. § 2000(E) *et seq.* ("Title VII") National Origin/ Ethnicity Discrimination (Disparate Treatment, Harassment, Hostile Work Environment, Constructive Discharge) Against Defendant Di Meo Brothers, Inc.

- Count II: Violation of The Illinois Human Rights Act (775 ILCS 5/2-101 *et seq.*) (Disparate Treatment, Harassment, Hostile Work Environment, Constructive Discharge) Against Defendant Di Meo Brothers, Inc.

- Count III: Intentional Infliction of Emotional Distress Against All Defendants

- Count IV: Violation of 42 U.S.C. § 1981 Discrimination and Retaliation Against All Defendants

- Count V: Negligent Supervision Against Defendant Di Meo Brothers, Inc.

- Count VI: Violation of The Fair Labor Standards Act (29 U.S.C. §201 *et seq.*) Against Defendants Di Meo Brothers, Inc., John DiMeo, Individually, and Mark DiMeo, Individually

- Count VII: Violation of The Illinois Minimum Wage Law (820 ILCS 105/1, e*t seq.*) Against Defendants Di Meo Brothers, Inc., John DiMeo, Individually, and Mark DiMeo, Individually

Defendants moved to dismiss Counts I through V on various grounds [37].

## II.     Legal Standard

To survive a Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a

'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly,* 550 U.S. at 558. In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiffs' favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). However, "[t]o survive a motion to dismiss, the well-pleaded facts of the complaint must allow the court to infer more than the mere possibility of misconduct." *Langworthy v. Honeywell Life & Acc. Ins. Plan*, 2009 WL 3464131, at *2 (N.D. Ill. Oct. 22, 2009) (citing *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011)). Additionally, the Court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). Evaluating whether a "claim is sufficiently plausible to survive a motion to dismiss is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *McCauley*, 671 F.3d at 616).

## III.     Analysis

### A.      Counts I and II, and Administrative Exhaustion

Defendants argue that there is an administrative exhaustion problem with Count I, the Title VII claims, and Count II, the Illinois Human Rights Act ("IHRA") claims. In short, they say that Plaintiff's complaint asserts claims that are not administratively exhausted because they were not included in the original administrative charge. The core issue is what documents the Court may consider as part of an administrative charge.

5

Under the general rule, claims under these statutes cannot be pursued in court if they have not been administratively exhausted. For example, a party can fail to administratively exhaust a claim by not including it in the administrative charge but raising it in a complaint. But there is an exception—claims not asserted in an administrative charge *are* considered exhausted if they are like or reasonably related to the charge and growing out of the charge. See *Chaidez v. Ford Motor Co.,* 937 F.3d 998, 1004-1005 (7th Cir. 2019). Here, Defendants argue that the charge asserts only a hostile work environment claim, but the complaint also includes a disparate treatment claim and hostile work environment allegations not raised in the charge. Therefore, Defendants argue: (1) the disparate treatment claims in the complaint should be dismissed; (2) all the disparate treatment allegations should be stricken; and (3) all hostile work environment allegations not included in the charge should be stricken. [38 at 8.] Plaintiff responds, essentially, that the Court should consider the pre-charge inquiry form as part of the charge, and all claims in the complaint were either raised or are reasonably related to the charge plus the pre-charge inquiry.

In this case, whether a claim is reasonably related to the administrative charge depends largely on whether the "charge" is *only* the one-page document titled "Charge" [38-1] or whether it can include other materials, such as the EEOC pre-charge inquiry [42-2]. Defendant urges the former view, because the formal charge contains only a short, one-paragraph description of the alleged wrongful conduct, which, according to Defendant, does not include any disparate treatment claims and portions of his harassment and hostile work environment claims. If correct, that would prevent Plaintiff from pursuing those claims in court. In support of their position, Defendants cite *Chaidez v. Ford Motor Co.,* 937 F.3d 998 (7th Cir. 2019), and *Cheek v. W. & S. Life Ins. Co.,* 31 F.3d 497 (7th Cir. 1994), for the proposition that a claim does not "reasonably relate" to an administrative charge unless it "describe[s] the *same conduct* and implicate[s] the *same*

*individuals*. *Chaidez*, 937 F.3d at 1004. Plaintiff, on the other hand, argues that *pro se* EEOC filings like his should be construed liberally and the Court should consider the pre-charge inquiry [42-2] as part of the charge, citing *Cheek* for the proposition that the Court can and should consider allegations outside the body of the charge "when it is clear that the charging party intended the agency to investigate the allegations." *Cheek*, 31 F.3d at 502.

First, *Chaidez* is not as helpful at this point because it does not answer the threshold question of what materials are part of an administrative charge. *Cheek* does address that question, but it is probably no longer good law on that point. As another court in this district has pointed out, *Cheek's* "narrower view of what can constitute an employee's 'charge' asserting employment discrimination has essentially been trumped by * * * *Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389 (2008). *Prendergast v. Chem. Pers. Search*, 2008 WL 927960, at *1 (N.D. Ill. Apr. 4, 2008). Under the Supreme Court's decision in *Holowecki*, "if a filing is to be deemed a charge it must be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." *Holowecki*, 552 U.S. at 402. There, the Supreme Court determined that an EEOC intake form in an Age Discrimination in Employment Act ("ADEA") case counted as part of the charge for administrative exhaustion purposes. The Supreme Court also noted that the ADEA is quite similar to Title VII, which supports Plaintiff's position. *Id.* at 402–03.

The problem here is that Plaintiff is not pointing to an intake form (EEOC Form 283), but a pre-charge inquiry (EEOC Form 290A), which says in bolded, capital letters on each page "**THIS PRE-CHARGE INQUIRY IS NOT A CHARGE OF DISCRIMINATION**." While the Court has found examples of other courts in this district considering intake forms as part of a charge, see, *e.g. Jordan v. Whelan Sec. of Illinois, Inc.*, 30 F. Supp. 3d 746, 751 (N.D. Ill. 2014), it has not

identified any case in which a pre-charge inquiry was considered part of a charge. Furthermore, the briefing does not cite any authority addressing whether a document that denies being a charge may be considered part of a charge. Based on the briefing so far, the Court is not convinced that it may consider the EEOC pre-charge inquiry as part of the charge.

Turning to the charge form itself, the document includes no references to disparate treatment at all, so Plaintiff's disparate treatment claims in this suit do not reasonably relate back to the charge. Therefore, the disparate treatment claims in Counts I and II are dismissed. The same is true for claims in Counts I and II based on Plaintiff's ethnicity, because the charge identifies only national origin as basis of discrimination.[3] Without authority stating that the Court may consider the pre-charge inquiry, or that national origin allegations in the charge form put Defendants on notice of ethnicity-based claims as well, the Court cannot conclude that the ethnicity-based claims relate back to the charge. As a result, the ethnicity-based claims in Counts I and II are dismissed too.

Defendants also ask the Court to strike allegations in the complaint that relate to disparate treatment and those that relate to a hostile work environment but were not included in the charge. The Court declines to do so. Liberally construing the charge and recognizing that non-lawyers need not include every little detail in their EEOC filings, the Court believes that the harassment and hostile work environment claims do reasonably relate to the charge. *Trnava v. Chicago Cut Steakhouse, LLC*, 2021 WL 148870, at *2 (N.D. Ill. Jan. 16, 2021) (citing *Taylor v. Western & S. Life Ins. Co.*, 966 F.2d 1188, 1195 (7th Cir. 1992)). Furthermore, allegations that Defendants say relate to disparate treatment could well be relevant to other claims, and Defendants cite no authority for striking such allegations from the complaint.

---

[3] Though the pre-charge inquiry form does check "race" boxes in addition to "national origin." [42-2 at 2, 3.]

8

Finally, the Court recognizes that the parties did not develop the issue of what materials may be considered part of the charge as exhaustively as they could have. Plaintiff may be able to plead additional facts supporting its position that the Court can consider the pre-charge inquiry, and now that the issue is out in the open, the parties may be able to flesh out their arguments based on more recent cases. Therefore, these dismissals are without prejudice to Plaintiff filing a second amended complaint.

### B.    Counts I and II, and Constructive Discharge

To plead constructive discharge, "a plaintiff needs to show that his working conditions were so intolerable that a reasonable person would have been compelled to resign." *Gilhooly v. UBS Sec., LLC*, 772 F. Supp. 2d 914, 917 (N.D. Ill. 2011) (quoting *Rabinovitz v. Pena,* 89 F.3d 482, 489 (7th Cir. 1996)). In fact, working conditions for constructive discharge must be even more intolerable than the "high standard for hostile work environment because 'in the ordinary case, an employee is expected to remain employed while seeking redress.'" *Tutman v. WBBM–TV, Inc./CBS, Inc.,* 209 F.3d 1044, 1050 (7th Cir. 2000) (quoting *Drake v. Minn. Mining & Mfg. Co.,* 134 F.3d 878, 886 (7th Cir. 1998)). Additionally, the plaintiff must have actually resigned. *Green v. Brennan*, 136 S. Ct. 1769, 1777, (2016) (citation omitted).

Defendants argue that the complaint does not allege a discriminatory motive, because it does not connect the alleged harassment—specifically vandalism of Plaintiff's vehicle—to any Defendant. This appears to be an argument that the complaint fails to plead that the damage to Plaintiff's car was an intolerable *working condition* because it does not connect the vandalism to anyone at Plaintiff's workplace. It is true that the complaint elides the matter of who committed the vandalism, as Plaintiff does not identify any alleged perpetrator. The Court may not simply assume it was one or more of the Defendants. But that is not the extent of the complaint's

allegations. It also asserts that Plaintiff suffered questions about his citizenship and tattoos, an ethnic slur, and unusually strict observation while on the job, [34 at ¶ 14], John DiMeo laughing at Plaintiff when he complained about the harassment [*id.* at ¶ 17], threats that he would lose his job if he kept complaining [*id.* at ¶¶ 19, 21], and assignments that violated his work restrictions [*id.* at ¶ 22]. Plaintiff thus has identified "specific examples of poor treatment" and alleged an unlawful motive for that treatment, and at this stage, that is enough. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 830 (7th Cir. 2014). Defendants' motion to dismiss is denied with respect to Plaintiff's constructive discharge claims.

### C. Count III: Intentional Infliction of Emotional Distress

Count III asserts a claim of intentional infliction of emotional distress ("IIED"). The Court begins with Defendants' argument regarding preemption, because if the claim is preempted, Plaintiff may not pursue it, regardless of whether the complaint adequately states the claim. The Illinois Human Rights Act ("IHRA") preempts civil rights violations and some torts related to civil rights violations, see *Richards v. U.S. Steel*, 869 F.3d 557, 564 (7th Cir. 2017), meaning that these claims must initially go through the administrative process of the Illinois Department of Human Rights and may not be taken directly to court. To determine whether a tort is barred by the IHRA, "the concrete question to ask is whether the plaintiff states a valid common-law claim without needing to rely on the rights and duties created by the [Illinois] Human Rights Act." *Id.* (citing *Maksimovic v. Tsogalis*, 687 N.E.2d 21, 24 (Ill. 1997); *Geise v. Phoenix Co. of Chicago,* 639 N.E.2d 1273, 1277 (Ill. 1994); *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 602–03 (7th Cir. 2006)). The Seventh Circuit has emphasized that the preemption test "rest[s] on an examination of legal duties, not on the factual" overlap between the claims. *Richards*, 869 F.3d at 564 (citing *Naeem*, 444 F.3d at 603 n.4). Thus, the Court must ask whether Plaintiff states a valid claim for

10

IIED without needing to rely on the IHRA. It is at least theoretically possible for a complaint to do so. See *Bannon v. Univ. of Chicago*, 503 F.3d 623, 630 (7th Cir. 2007); *Weis v. Timberline Knolls, LLC*, 2011 WL 687137, at *5 (N.D. Ill. Feb. 17, 2011). But the complaint in this case does not.

To prevail on a claim of intentional infliction of emotional distress, the plaintiff must prove the following three elements: (1) that the defendant's conduct was truly extreme and outrageous, (2) that the defendant either intended that his conduct would cause severe emotional distress or knew that there was a high probability that his conduct would do so, and (3) that the defendant's conduct did in fact cause severe emotional distress. *Taliani v. Resurreccion*, 115 N.E.3d 1245, 1254 (Ill. App. 2018) (citing *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988)). Whether conduct is extreme and outrageous is determined using an objective standard based upon all of the facts and circumstances present in a particular case. See *McGrath*, 533 N.E.2d at 811. Mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities do not constitute extreme and outrageous conduct for the purposes of an intentional infliction of emotional distress claim. *Id.* at 809 (citation omitted). Rather, for extreme and outrageous conduct, the nature of the defendant's conduct must be so extreme as to go beyond all possible bounds of decency and to be regarded as intolerable in a civilized community. *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 83 (Ill. 2003).

Liability for IIED is even more constrained in the employment context. *Richards*, 869 F.3d at 567. "Illinois courts have limited recovery to cases in which the employer's conduct has been truly egregious." *Van Stan v. Fancy Colours & Co.*, 125 F.3d 563, 568 (7th Cir. 1997). This is because "personality conflicts and questioning of job performance are unavoidable aspects of employment and * * * frequently, they produce concern and distress." *Id.* at 567 (internal quotation

marks omitted); *Naeem*, 444 F.3d at 606 (courts are hesitant "to find intentional infliction of emotional distress in the workplace because, if everyday job stresses resulting from discipline, personality conflicts, job transfers or even terminations could give rise to a cause of action for intentional infliction of emotional distress, nearly every employee would have a cause of action." (internal quotation marks omitted)); see also *Lewis v. School Dist. No. 70*, 523 F.3d 730, 747 (7th Cir. 2008) ("Employers often and necessarily take actions during the course of business that result in emotional distress, but those actions cannot be classified as 'extreme and outrageous' unless they go well beyond the parameters of the typical workplace dispute." (internal quotation marks omitted)). As a result, the bar for "extreme and outrageous" in the employer-employee context is not met unless an "employer clearly abuses the power it holds over an employee in a manner far more severe than the typical disagreements or job-related stress caused by the average work environment." *Naeem*, 444 F.3d at 605 (internal quotation marks omitted); *Lewis*, 523 F.3d at 747.

Plaintiff says that "[his] IIED claim arises from the fact that he notified DiMeo Brothers that he was being targeted for increasingly severe vandalism to his personal vehicle which constituted threats to his safety and, on the heels of his complaints, Defendant[4] threatened to fire him if he did not stop complaining." [42 at 13.] That is not exemplary workplace conduct, but it is not outrageous, truly egregious, or "beyond all possible bounds of decency" either, at least absent some affirmative allegation that a particular named Defendant perpetrated the vandalism and then

---

[4] It is not exactly clear which defendant Plaintiff's brief refers to. The most obvious reading of the paragraph is that "Defendant" means the corporate entity. That is consistent with how the amended complaint uses the term "Defendant." [See 34 at 2.] But the amended complaint also asserts the IIED claim against all defendants [*id.* at 12], and Plaintiff's response brief makes no effort to explain how (or whether) the amended complaint states an IIED claim against any individual Defendant. Though the Court need not address this discrepancy now, it raises it for the parties' consideration in case Plaintiff files a second amended complaint.

threatened to fire Plaintiff for complaining about it. *Feltmeier*, 798 N.E.2d at 83. This failure to plead the first element of an IIED claim alone warrants dismissal, but without prejudice.

### D.    Count IV: Section 1981 Retaliation

The complaint identifies Count IV as "Violation of 42 U.S.C. § 1981 Discrimination and Retaliation Against All Defendants." [34 at 12.] Defendants' motion to dismiss brief, under a heading titled "Failure to state a Section 1981 retaliation claim," begins by arguing that the complaint fails to state a claim for retaliation under Section 1981. See [38 at 12] (citing *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 564 (7th Cir. 2015), for the elements of a retaliation claim). However, the end of Defendants' one-paragraph argument seeks dismissal of both discrimination and retaliation claims. [38 at 12.] Plaintiff's response argues that the complaint states a claim for both discrimination and retaliation, [42 at 9-10], and Defendants' reply doesn't distinguish between the two types of claims, arguing that all of Plaintiff's Section 1981 claims should be dismissed. [49 at 6-7.]

Defendants framed this argument as a retaliation issue, and they made the argument based on the elements of a retaliation claim, citing *Castro*, [38 at 12], so the Court takes this as an argument about Plaintiff's Section 1981 retaliation claims. Defendants' request that the Court dismiss the Section 1981 discrimination claims is underdeveloped and therefore waived. *Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority." (citation omitted)).

To state a claim for Section 1981 retaliation, Plaintiff must plead: (1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two. See *Smith v. Chief Judge of Cir. Ct. of Cook Cty.*, 2021 WL 767624, at *8 (N.D. Ill. Feb.

26, 2021) (citations omitted). Defendant argues that the complaint fails to plead that the damage to Plaintiff's vehicle was caused by Defendants or that Plaintiff told Defendants that the damage to his vehicle was due to his national origin. For support, Defendant cites *Nolan v. City of Chicago*, 2017 WL 569164, *6 (N.D. Ill. 2017), for the proposition that general complaints of discrimination without a connection to a protected class are insufficient. [38 at 12.]

Defendants misread *Nolan*. Its discussion of linking discrimination to protected class related to hostile work environment claims, not retaliation. *Id.* at 5-6. Therefore, Defendants' argument, which appears to derive entirely from *Nolan*, is misplaced. Additionally, Plaintiff complained about harassment and abuse [34 at ¶ 16], which he alleges was based on his national origin [*id*. at ¶ 14].[5] Complaints about perceived discrimination are protected activity. *Pantoja v. Am. NTN Bearing Mfg. Corp.*, 495 F.3d 840, 848 (7th Cir. 2007) ("There is no question that Pantoja's complaints to HR about perceived discrimination constitute protected activity"). Plaintiff alleges that he was forced to quit. [34 at ¶ 23.] Constructive discharge is a materially adverse employment action. *Hopkins v. Bd. of Educ. of City of Chicago*, 73 F. Supp. 3d 974, 989 (N.D. Ill. 2014) (citing *Barton v. Zimmer, Inc.,* 662 F.3d 448, 453–54 (7th Cir. 2011)). Finally, Plaintiff says that specific threats to his job and harassment from Gavin, Pete, and Mark occurred because of his complaints. [34 at ¶ 19-22.] That is enough of a causal connection to pass muster at this stage. The complaint sufficiently alleges Section 1981 retaliation, and Defendants' motion to dismiss is denied with respect to Count IV.

---

[5] Together, these paragraphs allege (or at least allow the Court to reasonably infer) that Plaintiff complained about harassment based on his ethnicity or national origin or both, which takes the allegations beyond the general complaint that Defendants' reply brief, citing *Cole v. Board of Trustees of Northern Illinois University*, 838 F.3d 888, 901 (7th Cir. 2016), claims is not enough to state a claim.

14

### E. Count V: Negligent Supervision

Count V is a claim for negligent supervision. In Illinois, negligent supervision is a separate claim from negligent hiring or retention. See *Doe v. Coe*, 135 N.E.3d 1, 14–15 (Ill. 2019) ("This court set out the elements of negligent hiring and negligent retention in *Van Horne [v. Muller]*, 705 N.E.2d 898 [(Ill. 1998)]. This court did not, however, set out the elements for a negligent supervision claim in that decision. See *Vancura [v. Katris]*, 939 N.E.2d 328 [(Ill. 2010)] (noting that in *Van Horne* this court focused on negligent hiring and retention, not negligent supervision)"). The elements of a negligent supervision claim are that "(1) the defendant had a duty to supervise the harming party, (2) the defendant negligently supervised the harming party, and (3) such negligence proximately caused the plaintiff's injuries." *Coe*, 135 N.E.3d at 15. Prior notice of the employee's particular unfitness for a position is not required; "to impose a duty to supervise, only general foreseeability is required in an employment context." *Id.* at 16.

Defendants argue that the complaint merely recites the elements of a negligent supervision claim, except for the factual allegation that Plaintiff complained to Defendants that Gavin harassed him and Defendants did nothing to stop it. [38 at 11.] In particular, Defendants argue that the complaint fails to allege proximate cause, because it does not assert that Gavin damaged Plaintiff's vehicle. [38 at 11; 49 at 5-6.] Plaintiff's response discusses Mark DiMeo's reaction to Plaintiff's complaints about Gavin—yelling at Plaintiff and threatening to fire him—but it does not address the proximate cause argument.

The complaint fails, at the very least, to allege proximate cause between any negligent supervision of Gavin or other employees and damage to Plaintiff's vehicle. (In fact, the complaint seems to consciously avoid alleging who damaged the vehicle.) It also fails to allege any proximate cause between negligent supervision and Gavin's verbal harassment. It does allege that

other Defendants took Gavin's side and threatened to fire Plaintiff on June 17, 2019, but not that any negligent supervision caused any of the harassment before that. For failure to allege proximate cause, Count V is dismissed, without prejudice.

### F.    Motion to Strike Certain Allegations Regarding Defendant Gavin

Defendants' final argument is confused about whether it is a motion to strike or a motion to dismiss. On one hand, the section heading and the relief that Defendants seek relate to striking allegations that Gavin was Plaintiff's supervisor, suggesting that Defendants intend to frame the request as a motion to strike under Federal Rule of Civil Procedure 12(f). [38 at 12, 13.] On the other hand, Defendants' argument is that Plaintiff's allegations supporting the assertion that Gavin was his supervisor are "insufficient to meet the pleading standards of *Iqbal* and *Twombly*." [*Id.* at 13.] It is not clear which path Defendants are trying to pursue.

For the moment, both fail. First, under Rule 12(f), a court may strike "from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The allegations that Defendants want stricken fall into none of these categories. Furthermore, Defendants essentially seek dismissal of some claims against Gavin, as the reply brief admits. [49 at 7 ("allegations that Gavin was Plaintiff's supervisor should be dismissed")]. Substituting a motion to strike for a motion to dismiss is improper. *Peterson v. Baloun*, 715 F.Supp. 212, 213–14 (N.D. Ill. 1989) (noting that defendants' motion "exceed[ed] the proper scope of a motion to strike" because it sought to attack the merits of the claims and the sufficiency of the complaint); *Ehlerding v. Am. Mattress & Upholstery, Inc.*, 208 F. Supp. 3d 944, 953 (N.D. Ind. 2016) ("Rule 12(f) is not the proper vehicle to attack the sufficiency of Plaintiff's claims, which is essentially what Defendants are attempting to do"). For these reasons, to the extent that Defendants' request is a motion to strike, it is denied.

The request fares no better if construed as a motion to dismiss under Rule 12(b)(6). Despite invoking *Twombly* and *Iqbal*, this argument identifies no *claim* that Defendants believe the complaint does not adequately state. Rather, it asks the Court to strike or dismiss certain *allegations*. But none of the cases[6] Defendants cite suggest that the Court has authority under Rule 12(b)(6) to remove allegations from a complaint because (according to Defendants) they do not meet Title VII's definition of a supervisor. As a result, to the extent that Defendants' request is a motion to dismiss under Rule 12(b)(6), it is denied.

## IV. Conclusion

For the reasons explained above, the motion to dismiss [37] is granted in part and denied in part. Specifically, the motion is granted with respect to: disparate treatment claims in Counts I and II; claims based on ethnicity in Counts I and II; Count III; and Count V, all of which are dismissed without prejudice. The motion is denied with respect to: constructive discharge claims in Counts I and II; Count IV; and all requests to strike material from the amended complaint. Plaintiff is given until April 29, 2021, to file a second amended complaint, if he wishes and can do so consistent with the reasoning in this order and Federal Rule of Civil Procedure 11. Counsel are directed to file a joint status report no later than May 6, 2021 that includes a proposed case management plan.

Dated: March 29, 2021

Robert M. Dow, Jr.
United States District Judge

---

[6] *Vance v. Ball State Univ. (Vance II)*, 570 U.S. 421 (2013); *Shah v. Littlefuse, Inc.*, 2013 WL 18289926 (N.D. Ill. 2013); and *Alioto v. Town of Lisbon*, 651 F.3d 715 (7th Cir. 2011). Additionally, contrary to Defendant's argument based on *Alioto*, Plaintiff *did* respond to the argument that its supervisory allegations were insufficient and therefore did not waive the point. See [42 at 8, n.2].